1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10

11   GERALD D. KEELER,                    )     Case No. 09-cv-268-WQH (JMA)
                                          )
12               Petitioner,              )
                                          )
13   v.                                   )     REPORT AND RECOMMENDATION
                                          )     TO DENY HABEAS PETITION
14   MATTHEW CATE, Secretary,             )
                                          )
15               Respondent.              )
                                          )
16   ─────────────────────────────       )

17          Petitioner Gerald D. Keeler, a state prisoner proceeding pro se, filed a Petition for

18   Writ of Habeas Corpus (the "Petition") on January 29, 2009.  (Doc. No. 1.)  Petitioner

19   contends that when the trial court denied his request to continue his probation

20   revocation hearing it: (1) violated his Fourteenth Amendment due process right to obtain

21   private counsel; (2) violated his constitutional rights by denying him an opportunity to

22   subpoena and examine his own probation officer at the revocation hearing, and (3)

23   denied his constitutional right to produce and present exculpatory evidence.[1]  (Petition,

24   5-9.)

25          On May 5, 2009, Respondent filed an Answer (the "Answer") asserting that the

26   California Court of Appeal reasonably denied Petitioner's claim the trial court abused its

27

28          _____

             [1]  The Petition also includes a fourth claim that was voluntarily abandoned by Petitioner
        on March 2, 2008.  (Doc. No. 9.)

                                                                              09-cv-268

discretion in denying the requested continuance and that Petitioner is not entitled to federal habeas relief on his second and third claims.  (Doc. No. 16; 16-1.)  Petitioner filed a document captioned "Denial and Exception to the Return to the Order to Show Cause and Memorandum of Points and Authorities in Support Thereof" on May 15, 2009, that the Court construes as Petitioner's Traverse (the "Traverse").  (Doc. No. 20.) The Court has reviewed the Petition, Answer, Traverse and all supporting memoranda and lodgments.  For the reasons discussed below, the Court RECOMMENDS that the Petition be DENIED.

## **FACTUAL BACKGROUND**

These proceedings commenced with two cases initiated in the Superior Court of San Diego County.  In case no. SCD200034, the People alleged that on July 3, 2006 Petitioner:  1) was in possession of cocaine base (Cal. Health & Safety Code § 11350 (a)); 2) was under the influence of cocaine (*Id.*); 3) drove under the influence of drugs (Cal. Veh. Code § 23152 (a)); 4) possessed paraphernalia used for narcotics (Cal. Health & Safety Code § 11364)); 5) drove with a suspended license (Cal. Veh. Code § 14601.1 (a)); and possessed marijuana (Cal. Health & Safety Code § 11357 (b)). (Lodgment No. 10, *People v. Keeler*, No. D052056, slip op. at 2 (Cal. Ct. App. Nov. 4, 2008).)  The information alleged that Petitioner had eight prior convictions, including two felony robbery convictions that qualified as strikes within the meaning of the "Three Strikes" law.  (Cal. Penal Code §§ 211, 667 (b) through (I), 668, and 1170.12.)  A separate information in case no. SCD201637 alleged that on approximately September 17, 2006, Petitioner possessed cocaine base (Cal. Health & Safety Code § 11350 (a)) and alleged as an enhancement that he committed the crime while released on bail (Cal. Penal Code § 120221 (b)). *Id.*

On November 14, 2006, Petitioner pleaded guilty to two counts of possession of cocaine base (Cal. Penal Code § 11350 (a)) and admitted one prior strike allegation and the Cal. Penal Code § 12022.1 (b) enhancement.  *Id.*  The trial court suspended imposition of the sentence, placed him on three years probation and ordered him to

drug treatment.  *Id.*

On February 15, 2007, the trial court found Petitioner had violated his probation by testing positive for drugs.  The court reinstated probation and told Petitioner "You're ordered to go to probation today to get a referral for VVSD (Veterans Village of San Diego).  I'm not sure if there's a bed today, I hope so, but there might not be.  And you have cocaine in your system, so you'll probably have to wait until tomorrow."  On May 18, 2007, the court found Petitioner violated probation for being arrested while he was under the influence, reinstated probation and ordered Petitioner "to continue the program at the V.A. until we can switch it to the VVSD."  *Id.* at 3.

On July 2, 2007, a probation revocation hearing was held during which the court found Petitioner had violated probation based on his positive drug tests.  The deputy public defender represented that Petitioner and counsel "discussed, way back in May, his desire to go into a VVSD program, but as the court can see... he's got an ankle bracelet, which is a monitoring device for a Temecula misdemeanor for domestic violence.  And he still lives with his wife, with the permission of the court.  The situation in Temecula is preventing him from qualifying for a residential treatment program."  Petitioner requested the probation revocation hearing be continued and the Court accommodated his request.  In doing so, the court commented "(e)ven with the ankle bracelet, you're still testing positive.  I understand addiction, but I'm concerned basically for you.  I don't know what I can do at this time, other than to tell you that if you are in the V.A. program, I really hope you work that program between now and the time I see you in about three or four weeks."  The court added, "(a)nd one last thing, for the record, so it's clear: I want you to come in with proof of three self-help meetings."  *Id.* at 3 - 4.

The next probation revocation hearing was held on July 30, 2007.  Petitioner, who was again represented by a deputy public defender, requested the hearing be continued again, in order to allow him time to hire a private attorney and to subpoena records from the V.A. regarding drug testing.  (*Id.*; Lodgment No. 2, Reporter's Appeal Transcript "RAT" Vol. 3 at 21.)  The trial court denied his request because Petitioner,

1   having received timely notice of the deferred hearing date, failed to avail himself of the

2   opportunity to hire private counsel.  (Lodgment No. 10, at 4.)  During the hearing it was

3   disclosed that Petitioner had been arrested for possession of drug paraphernalia seven

4   days prior.  The court revoked his probation.  *Id.*

5        At the sentencing hearing on September 17, 2007, the trial court denied

6   Petitioner's motion to strike a prior conviction, denied probation, and sentenced him to

7   prison for the lower term doubled of 32 months in prison in case SCD200034, and a

8   consecutive term one third the middle term doubled of 16 months in case no.

9   SDC201637.  The court followed the probation report and awarded Petitioner 26 days of

10  custody credits.  *Id.* at 4 - 5.

11                              **PROCEDURAL BACKGROUND**

12        Petitioner appealed from the judgment in case nos. SCD200034 and SDC201637

13  to the California Court of Appeal.  (Lodgment No. 7, *People v. Keeler*, No. D052056,

14  Appellant's Opening Brief.)  Petitioner's appellate counsel argued that the order

15  revoking his probation should be reversed because: 1) the trial court improperly denied

16  the request to obtain private counsel and the related request to continue the hearing,

17  and 2) the trial court abused its discretion in refusing to strike a fourteen year old

18  conviction and in imposing a lengthy prison sentence  (*Id.* at 6 and 16.)  The Court of

19  Appeal affirmed the lower court's judgment in an unpublished opinion.  (Lodgment No.

20  10, *People v. Keeler*, No. D052056, slip op.)  Petitioner subsequently filed a petition for

21  review in the California Supreme Court, which that court summarily denied on January

22  14, 2009.  (Lodgment Nos. 12 and 13,  *People v. Keeler*, No. S168156, Petition for

23  Review and slip. op.)

24        Petitioner also sought habeas relief in the state courts.  The claims presented to

25  the San Diego County Superior Court and Court of Appeal did not include the claims

26  currently before this Court.  (See Lodgment No. 4, *Keeler v. People*, No. HC19211,

27  Amended Petition for Writ of Habeas Corpus and Lodgment No. 6, *Keeler v. People*,

28  No. D052627, Petition for Writ of Habeas Corpus.)  His habeas petition to the California

09-cv-268

Supreme Court, however, included claims that the trial court erred (1) by denying his

request to continue his probation revocation hearing to obtain private counsel; (2) by

denying him an opportunity to subpoena and examine his own probation officer at the

revocation hearing, and (3) by effectively denying him the right to produce and present

exculpatory evidence at the revocation hearing by denying his request to continue the

hearing.  (Lodgment No. 14, *Keeler v. People*, No. S168762, Petition for Writ of Habeas

Corpus.)  The California Supreme Court summarily denied his petition without comment

or citation to authority.  (Lodgment No. 16, *Keeler v. People*, No. S168762.)

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C.A. §

2244, applies to all federal habeas petitions filed after April 24, 1996.  *Woodford v.*

*Garceau*, 538 U.S. 202, 204 (2003) (citing Lindh v. Murphy, 521 U.S. 320, 326 (1997)).

The AEDPA sets forth the scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court
> shall entertain an application for a writ of habeas corpus in behalf of a
> person in custody pursuant to the judgment of a State court only on the
> ground that he is in custody in violation of the Constitution or laws or
> treaties of the United States.

28 U.S.C.A. § 2254(a); see also *Reed v. Farley*, 512 U.S. 339, 347 (1994); *Hernandez*

*v. Ylst*, 930 F.2d 714, 719 (9th Cir. 1991).  Because this Petition was filed on June 29,

2009, the AEDPA applies to this case. See *Woodford*, 538 U.S. at 204.

In 1996, Congress "worked substantial changes to the law of habeas corpus."

*Moore v. Calderon*, 108 F.3d 261, 263 (9th Cir. 1997). Amended § 2254(d) now reads:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim --
>
> > (1) resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law,
> > as determined by the Supreme Court of the United
> > States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in light of the
> > evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d).

To present a cognizable federal habeas corpus claim, a state prisoner must allege that his conviction was obtained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner must allege that the state court violated his federal constitutional rights. *Hernandez*, 930 F.2d at 719; *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990); *Mannhalt v. Reed*, 847 F.2d 576, 579 (9th Cir. 1988).

A federal district court does "not sit as a 'super' state supreme court" with general supervisory authority over the proper application of state law. *Smith v. McCotter*, 786 F.2d 697, 700 (5th Cir. 1986); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (holding that federal habeas courts must respect a state court's application of state law); *Jackson*, 921 F.2d at 885 (explaining that federal courts have no authority to review a state's application of its law). Federal courts may grant habeas relief only to correct errors of federal constitutional magnitude. *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1400 (9th Cir. 1989) (stating that federal courts are not concerned with errors of state law unless they rise to level of a constitutional violation).

In *Lockyer v. Andrade*, 538 U.S. 63 (2003), the U.S. Supreme Court stated that the "AEDPA does not require a federal habeas court to adopt any one methodology in deciding the only question that matters under § 2254(d)(1) -- whether a state court decision is contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.* at 71 (citation omitted). In other words, a federal court is not required to review the state court decision de novo. *Id.* Rather, a federal court can proceed directly to the reasonableness analysis under § 2254(d)(1). *Id.*

The "novelty" in § 2254(d)(1) is "the reference to 'Federal law, as determined by the Supreme Court of the United States.'" *Lindh v. Murphy*, 96 F.3d 856, 869 (7th Cir. 1996) (en banc), rev'd on other grounds, 521 U.S. 320 (1997) (emphasis added). Section 2254(d)(1) "explicitly identifies only the Supreme Court as the font of 'clearly established' rules." *Id.* "[A] state court decision may not be overturned on habeas corpus

1  review, for example, because of a conflict with Ninth Circuit-based law." *Moore*, 108

2  F.3d at 264. "[A] writ may issue only when the state court decision is 'contrary to, or

3  involved an unreasonable application of,' an authoritative decision of the Supreme

4  Court." *Id.*; see also *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996); *Childress v.*

5  *Johnson*, 103 F.3d 1221, 1225 (5th Cir. 1997); *Devin v. DeTella*, 101 F.3d 1206, 1208

6  (7th Cir. 1996).  Furthermore, with respect to the factual findings of the trial court, the

7  AEDPA provides:

8      In a proceeding instituted by an application for a writ of habeas corpus by
        a person in custody pursuant to the judgment of a State court, a
9      determination of a factual issue made by a State court shall be presumed
        to be correct. The applicant shall have the burden of rebutting the
10     presumption of correctness by clear and convincing evidence.

11  28 U.S.C.A. § 2254(e).

12                                  **DISCUSSION**

13      All three grounds asserted as a basis for habeas relief stem from the trial court's

14  denial of Petitioner's request to continue the probation revocation hearing, which he

15  contends denied him the right to retain private counsel (Claim 1), denied him the

16  opportunity to subpoena and examine his probation officer (Claim 2), and denied him

17  the right to produce and present exculpatory evidence (Claim 3).

18  **I.      Applicable Supreme Court Precedent**

19      Prior to revocation of probation, "a probationer, like a parolee, is entitled to a

20  preliminary and a final revocation hearing . . . ." *Gagnon v. Scarpelli*, 411 U.S. 778, 782

21  (1973); see *Morrissey v. Brewer*, 408 U.S. 471, 485, 487 (1972). There are

22  some exceptions.

23      [W]here petitioner has already been convicted of and incarcerated on a
        subsequent offense, there is no need for the preliminary hearing . . . .
24     [T]he subsequent conviction obviously gives the [probation] authority
        "probable cause or reasonable ground to believe that the. . . [probationer]
25     has committed acts that would constitute a violation of [probation]
        conditions" . . . .

26

27  *Moody v. Daggett*, 429 U.S. 78, 86 n.7 (1976) (citation omitted). Probation cannot be

28  revoked without providing the minimum requirements of due process, including the

                                        7

following:

> "(a) written notice of the claimed violations of (probation or) parole; (b) disclosure to the (probationer or) parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking (probation or) parole."

*Gagnon*, 411 U.S. at 786 (quoting *Morrissey*, 408 U.S. at 489).  Where the probationer has admitted he violated probation or has been convicted of a crime, he is still entitled to a revocation hearing.  *Moody*, 429 U.S. at 86 n.8. At the hearing, however, he may not relitigate facts constituting the violation but may present evidence to justify his continued probation. *Id.*

With regard to decisions made by trial judges relating to continuances, the Supreme Court has found "(t)he matter of a continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel.... Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.... There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied."  *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964) (citations omitted); see also *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) ("broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to assistance of counsel").  Even if a request for continuance is improperly denied, habeas relief is not available unless there is a showing of actual prejudice to petitioner's defense resulting from the refusal to grant a continuance. *See Gallego v. McDaniel*, 124 F.3d 1065, 1072 (9th Cir.1997).

1 **II.   Claim One**

2       In support of his first ground for habeas relief, Petitioner contends the trial court

3 violated his Fourteenth Amendment right to due process by denying his request to

4 continue his probation revocation hearing in order to obtain private counsel. (Petition 5)

5 Respondent counters that the California Court of Appeal reasonably concluded the trial

6 court did not abuse its discretion by denying the request and, therefore, Petitioner has

7 not shown the Court of Appeal's decision was based on an unreasonable application of

8 established U.S. Supreme Court precedent.

9       In rejecting Petitioner's argument, the Court of Appeal reasoned:

10            Here, on the day set for hearing (Petitioner) had not yet retained a
         private lawyer, although (Petitioner) had advance notice of the hearing.
11       (Petitioner) did not present evidence regarding his attempts to contact
         private counsel.  Under these circumstances, the trial [court] did not abuse
12       its discretion in denying the continuance.

13 (Lodgment No. 10, at 6.)

14       The Sixth Amendment provides that "(i)n all criminal prosecutions, the accused

15 shall enjoy the right... to have the Assistance of Counsel for his defense."  U.S. Const.

16 amend. VI.  This includes a qualified right to have counsel of defendant's choice if he

17 can pay for it and counsel is willing to serve.  *See Wheat v. United States*, 486 U.S.

18 153, 159, 164 (1988).  This right is qualified in that it "may be overcome by 'a showing

19 of a serious potential for conflict'" or that the proposed choice will interfere with the

20 integrity of the proceeding.  *Id.* at 164.  Probation revocation, however, "like parole

21 revocation, is not a stage of criminal prosecution..."  *Gagnon*, 411 U.S. at 782.  Both

22 are imposed after the criminal prosecution.  *Id.* at 781.  Thus, a defendant does not

23 have an automatic right to counsel at a probation revocation hearing.  *Id.* at 790

24 (reasoning that counsel should be provided in cases where the probationer claims he

25 did not commit the alleged probation violations, or when substantial reasons in

26 mitigation exist that make the revocation inappropriate).

27

28       In considering whether the denial of a continuance implicating a defendant's right

1    to counsel is an abuse of discretion, the Ninth Circuit has applied these factors: (1)

2    whether the continuance would inconvenience witnesses, the court, counsel, or the

3    litigants; (2) whether other continuances have been granted; (3) whether legitimate

4    reasons exist for the delay; (4) whether the delay is the defendant's fault; and (5)

5    whether a denial would prejudice the defendant. *See United States v. Mejia*, 69 F.3d

6    309, 314 n. 5 (9th Cir.1995) (citing *United States v. Robinson*, 967 F.2d 287, 291 (9th

7    Cir.1992)); *see also United States v. Garrett*, 179 F.3d 1143, 1145-47 (9th Cir. 1999)

8    (en banc).  A trial court requires "wide latitude in balancing the right to counsel of choice

9    against the needs of fairness, and against the demands of its calendar."  *Miller v.*

10   *Blacketter*, 525 F.3d 890, 895 (9th Cir. 2008).

11          The application of the factors identified by the Ninth Circuit to Petitioner's claim

12   leads to the conclusion that this decision was not contrary to or an unreasonable

13   application of U.S. Supreme Court precedent.  The delay was at Petitioner's request

14   and it was, in fact, his second request to continue the probation revocation hearing.  On

15   July 2, 2007, the date on which the hearing was originally scheduled, Petitioner was

16   represented by Deputy Public Defender Marsha Dugan, who requested the hearing be

17   continued because she was "scrambling to try and keep" Petitioner "out of state prison."

18   (Lodgment No. 2, Vol. 3, at 14 - 16.)  The request was granted and the hearing was

19   reset for July 30, 2007.  *Id.* at 17 - 18.

20          At the probation revocation hearing held on July 30, 2007, Petitioner was

21   represented by Deputy Public Defender Cheryl Landi.  *Id.* at 20.  Ms. Landi moved on

22   Petitioner's behalf to continue the hearing in order for Petitioner to obtain private

23   counsel, referred to as "Mr. Quirk," and to subpoena evidence regarding the V.A.'s

24   testing.  *Id.*  The trial court denied the continuance, explaining that Petitioner had been

25   on notice of the hearing date since July 2, 2007.  *Id.* at 22.  When Petitioner explained

26   he had been unable to contact Mr. Quirk because Petitioner had pneumonia, the trial

27   court observed that Petitioner had "managed to suffer a new arrest on July 23rd."  *Id.* at

28   23.  The hearing proceeded with Petitioner being represented by Ms. Landi.

In reviewing the totality of the circumstances, it is evident that this was not a case of a trial judge with a "myopic insistence upon expeditiousness in the face of a justifiable request for delay." *Ungar*, 376 U.S. at 589.  The trial court could have reasonably concluded that Petitioner had an adequate amount of time to retain Mr. Quirk, that he would not be prejudiced by being represented by Ms. Landi instead, and that the demands of the Court's calendar and the inconvenience to witnesses and counsel weighed in favor of not continuing the hearing.  The Court, therefore, agrees with the Court of Appeal's decision that the trial court did not abuse its discretion in denying the continuance.

Assuming for argument's sake, however, that the request for continuance was improperly denied, Petitioner fails to show any actual prejudice resulting from the trial court's decision.  "Actual prejudice" is demonstrated if the error in question had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).  Petitioner was represented by counsel during the hearing.  He has not established that the representation she provided was lacking or that, had Mr. Quirk represented him instead, the hearing would have had a different outcome.  Thus, Petitioner has not shown that there was a due process violation or a violation of his Sixth Amendment right to counsel.

**III.   Claim 2**

In support of his second claim, Petitioner contends that by denying his request for a continuance, the trial court violated his constitutional rights by denying him the opportunity to subpoena his probation officer, Juli Stollenwerk, who was familiar with the alleged claim violations.  (Petition, 8.)  Observing that Petitioner failed to show he requested to subpoena and examine Stollenwerk at the hearing on July 30, 2007 and that probation officer Kerry Ranshaw testified, without objection, and was cross-examined by Petitioner's counsel, Respondent counters that this claim is procedurally defaulted and substantiated only by conclusory allegations that do not warrant habeas relief.  Respondent further argues Petitioner fails to establish that the California

Supreme Court's denial of this claim was contrary to or an unreasonable application of established U.S. Supreme Court precedent.

**Procedural Default**

Petitioner did not object to the hearing proceeding with Ranshaw testifying instead of Stollenwork.  Because there was no objection made during the hearing Respondent contends that appellate review of his claim was barred by the contemporaneous objection rule which in turn results in procedural default, thus precluding federal habeas review of the alleged error unless Petitioner demonstrates "cause" for his failure to timely object and "prejudice" resulting from the error.  *People v. Fosselman*, 33 Cal. 3d 572, 580-81; *Garrison v. McCarthy*, 653 F.2d 374, 377 (9th Cir. 1981); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

Under the doctrine of procedural default, federal courts will not review "a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judg-ment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  There are limitations, however, as to when a federal court should invoke procedural default and refuse to evaluate the merits of a claim because a petitioner violated a state's procedural rules. Procedural default can only block a claim in federal court if the state court "clearly and expressly states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). A state law ground is interwoven with federal law if application of the state procedural rule requires the state court to resolve a question of federal law. *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000), *citing Ake v. Oklahoma*, 470 U.S. 68, 75 (1985). If the state court does not make clear that it is resting its decision on an independent and adequate state ground, it is presumed that the state denial was based at least in part upon federal grounds. *Calderon v. United States District Court ("Bean")*, 96 F.3d 1126, 1129 (9th Cir. 1996).

The Court does not find that procedural default is a bar to this habeas claim.  The record does not establish that the California Supreme Court, which was the only state

court to consider this claim, denied the claim under the contemporaneous objection rule. The court issued a silent denial, which lacks any comment or legal authority, and which is considered to be a decision "on the merits of the claims." *See Hunter v. Aispuro*, 982 F.2d 344, 347-48 (9th Cir. 1992); *see also Lambert v. Blodgett*, 393 F.3d 943, 965-67 (9th Cir. 2004)(discussing the meaning of "adjudicated on the merits.").

When a state court reaches the merits of a claim but does not articulate the rationale for its determination, a federal district court must conduct an independent review of the record to determine whether the state court clearly erred in its application of controlling federal law. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002); *Greene v. Lambert*, 288 F.3d 1080, 1089 (9th Cir. 2002) ("Federal habeas review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.')  Although the record is independently reviewed, federal courts will still defer to the state court's ultimate decision. *Pirtle*, 313 F.3d at 1167.

**Analysis of Merits of Claim 2**

In turning to the merits of Petitioner's second claim, the Court observes that a criminal defendant has the fundamental right to present a defense and to present witnesses.  For more than fifty years, the Supreme Court has clearly and repeatedly articulated these core constitutional guarantees.  In 1948, Justice Black, writing for the Supreme Court, declared that a defendant's "right to his day in court" is "basic in our system of jurisprudence" and includes "as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel." *In re Oliver*, 333 U.S. 257, 273 (1948) (emphasis added). Since then, the Supreme Court has again and again noted the "fundamental" or "essential" character of a defendant's right both to present a defense, *Crane v. Kentucky*, 476 U.S. 683, 687, 690 (1986); *California v. Trombetta*, 467 U.S. 479, 485 (1984); *Webb v. Texas*, 409 U.S. 95, 98 (1972); *Washington v. Texas*, 388 U.S. 14, 19 (1967), and to present witnesses as a part of that defense.

1   *Taylor v. Illinois*, 484 U.S. 400, 408 (1988); *Rock v. Arkansas*, 483 U.S. 44, 55 (1987);

2   *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973); *Webb*, 409 U.S. at 98; *Washington*,

3   388 U.S. at 19.

4        The U.S. Supreme Court has variously stated that an accused's right to a

5   defense and right to present witnesses emanate from the Sixth Amendment, *Taylor*, 484

6   U.S. at 409; *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982), the Due

7   Process Clause of the Fourteenth Amendment, *Rock*, 483 U.S. at 51; *Trombetta*, 467

8   U.S. at 485; *Chambers*, 410 U.S. at 294; *Webb*, 409 U.S. at 97; *Oliver*, 68 S.Ct. at 507,

9   or both. *Crane*, 476 U.S. at 690; *Strickland v. Washington*, 466 U.S. 668, 684-85 (1984);

10  *Washington*, 388 U.S. at 17-18.  The Sixth Amendment source of these rights is the

11  Compulsory Process Clause, which embraces "the right to have the witness' testimony

12  heard by the trier of fact." *Taylor*, 484 U.S. at 409.  *Washington* formally incorporated

13  the Compulsory Process Clause into the Due Process Clause of the Fourteenth

14  Amendment. 388 U.S. at 17-19.  That case stated:

15       The right to offer the testimony of witnesses, and to compel their atten-
         dance, if necessary, is in plain terms the right to present a defense, the
16       right to present the defendant's version of the facts as well as the prosecu-
         tion's to the jury so it may decide where the truth lies. Just as an accused
17       has the right to confront the prosecution's witnesses for the purpose of
         challenging their testimony, he has the right to present his own witnesses
18       to establish a defense. This right is a fundamental element of due process
         of law.
19

20  *Id.* at 19.  As observed in the Court's earlier discussion of applicable U.S. Supreme

21  Court precedent, the right to present witnesses and establish a defense applies to

22  probation revocation hearings in addition to trial.  S*ee Gagnon*, 411 U.S. at 786.

23       Although Petitioner contends the trial court's denial of his request for a continu-

24  ance denied him his right to present Stollenwerk as a witness, he never actually

25  requested the trial court continue the probation revocation hearing in order for

26  Stollenwerk to testify.  Furthermore, Petitioner does not establish that he ever sought to

27  present Stollenwork as a witness at all.  Petitioner did not request to subpoena

28  Stollenwerk or object to Ranshaw testifying at the hearing when he was presented as a

1   witness for the prosecution.  In fact, Stollenwerk's participation was not made an issue

2   until well into the proceeding, at the conclusion of Ranshaw's cross-examination when

3   he testified that Stollenwerk was Petitioner's probation officer.  (Lodgment No. 2, Vol. 3,

4   p. 34.)  At that point, counsel stated "Perhaps, we need to have his probation officer" to

5   which the Court responded "(a)t this point we're at (in) the evidentiary hearing I'm not

6   going to call new witnesses.  I'll let the people proceed on to prove-up the violations or

7   lack of violations."  *Id.*  It is a stretch to read into this verbal exchange a request on the

8   part of Petitioner to continue the hearing in order for Petitioner to present Stollenwerk as

9   a witness.  Even if one were to do so, however, the trial court's response clearly

10  indicates that it did not arbitrarily deny Petitioner a continuance or the right to call

11  Stollenwerk as a witness.   Given the previous delay of the hearing and the fact that

12  Petitioner's interest in Stollenwerk as a potential witness was not raised until well into

13  the proceeding, during the cross-examination of Ranshaw, and when balanced against

14  the demands on the trial court's calendar and the fact that the information Stollenwerk

15  could potentially offer could also be obtained without further delay from Petitioner, the

16  trial court could have reasonably concluded that the hearing should not be continued

17  further in order to allow Petitioner time to subpoena a new witness.

18        Furthermore, to establish a violation of the constitutional right to present a

19  witness, a defendant must make a "plausible showing of how [the] testimony would

20  have been both material and favorable to his defense." *Valenzuela-Bernal*, 458 U.S. at

21  867; *see also Rock*, 483 U.S. at 51; *United States v. Scheffer*, 523 U.S. 303, 315

22  (1998).   Petitioner fails to do so.

23        Assuming arguendo Petitioner sought a continuance of the hearing in order to

24  subpoena Stollenwerk as a witness, and assuming further the trial court abused its

25  discretion in denying the request, Petitioner has failed to demonstrate he was preju-

26  diced by that decision. He was not prevented from putting forth essentially the same

27  defense he claims he would have offered had he been granted a continuance. *See*

28  *Brecht*, 507 U.S. at 623 (stating actual prejudice requires a "substantial and injurious

effect or influence in determining the jury's verdict").  Although he never objected to Ranshaw as a witness, Petitioner now contends that Ranshaw lacked personal knowl-edge of the violations and the "facts regarding the test, arrest, treatment, complaint." (Petition, 8; Traverse, 8.)  He contends Stollenwerk, on the other hand, was familiar with his complaints of the testing at the V.A. outpatient drug program and the inadequate treatment Petitioner contends he received.  (Petition, 8.)   Petitioner, however, testified on his own behalf at the hearing regarding these very subject matters.  (Lodgment No. 2, Vol 3, at 29-32.)  He testified as to why he thought the V.A. testing methods were flawed, his complaints regarding the inadequacy of the V.A.s outpatient treatment program and the concerted efforts by Petitioner and his wife to have him placed him in an in-patient program.  *Id.*  While Stollenwork's testimony, assuming it would have been consistent with Petitioner's representation, may have been slightly more favorable to his defense, it would have been essentially duplicative of Petitioner's testimony, which was duly considered by the trial court.  *Id.*, at 37-38.  Thus, Petitioner has failed to demon-strate that any alleged error by the trial court had a "substantial and injurious effect or influence" on the trial court's decision or that the California Supreme Court's denial of this claim was contrary to or an unreasonable application of U.S. Supreme Court precedent.

## IV.    Claim 3

In his third, and final, claim for habeas relief Petitioner contends that he was denied the right to produce exculpatory evidence due to the trial court's "myopic insistence upon expeditiousness in proceeding."  (Petition, 9.)

### Procedural Default

Respondent also argues this claim is procedurally defaulted because it was not raised in the trial court.   The Court does not find that procedural default is a bar to this habeas claim.  As was the case with the prior claim, the record does not establish that this claim was denied by the state courts under the contemporaneous objection rule. The California Supreme Court, which was the only state court to consider this claim,

1   issued a silent denial, lacking any comment or legal authority, which is deemed to be a

2   decision on the merits.  The decision, therefore, is subject to an independent review to

3   determine whether the state court clearly erred in its application of controlling federal

4   law.  *Pirtle*, 313 F.3d at 1167; *Greene*, 288 F.3d 1089.

5          **Analysis of Merits of Claim 3**

6          Petitioner contends that because the trial court denied his request to continue the

7   hearing he was denied the right to produce exculpatory evidence "regarding the efficacy

8   of Petitioner's purported failed drug test and the illegal arrest on July 23, 2007."

9   (Petition, 9.)  He does not identify what the alleged exculpatory evidence actually is.

10  Whatever this evidence is, Petitioner contends it would have established he was

11  wrongfully discharged from the outpatient drug program and that drug testing at the

12  outpatient program could have been challenged.  *Id.*  He also claims it would have

13  shown Petitioner had problems with the outpatient drug program and asked to be

14  placed in a residential drug program.  *Id.*  Lastly, he states the evidence would have

15  shown the arrest should not have been a basis for revoking parole.  *Id.*

16         As stated earlier in the Court's discussion of U.S. Supreme Court precedent, the

17  minimum requirements of due process afford a defendant the opportunity to present

18  evidence to justify his continued probation.  *Gagnon*, 411 U.S. at 786 (quoting

19  *Morrissey*, 408 U.S. at 489); *Moody*, 429 U.S. at 86 n.8.  In matters of continuances,

20  however, broad discretion must be granted trial courts and only an unreasoning and

21  arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay'

22  violates a defendant's due process rights.  *Morris*, 461 U.S. at 11-12.

23         In this case, Petitioner has not shown that his due process rights were violated

24  either by the denial of a request for a continuance or due to the exclusion of evidence.

25  First, as explained in the Court's analysis of Plaintiff's first claim, the trial court's denial

26  of the request for continuance was not a myopic insistence upon expeditiousness that

27  constituted an abuse of discretion.  When the request for continuance was made, in

28  addition to contending Petitioner required more time to retain Mr. Quirk, Ms. Landi

argued Petitioner had just raised that there was a problem with the V.A.'s drug testing and that a continuance was necessary so she or Mr. Quirk could subpoena records from the V.A.  (Lodgment No. 2, Vol 3, at 21.)  The trial court could have reasonably concluded that Petitioner already had an adequate amount of time to subpoena these records given that the tests in question had been administered in February 2007 and Petitioner had previously been granted a continuance.  In weighing these facts against the demands of the Court's calendar and the inconvenience to witnesses and counsel, the trial could have also reasonably concluded the circumstances weighed in favor of not continuing the hearing.

Second, the scope of the evidence Petitioner now contends was excluded appears to be broader than was described to the trial court as a basis for the continuance.  When the request for a continuance was made, it was on the basis that Petitioner needed additional time to retain Mr. Quirk and to subpoena records from the V.A. regarding the drug testing.  Petitioner did not predicate his request for a continuance on the basis that he was being prevented from "obtaining and producing" evidence of the nature alleged in the Petition, i.e., evidence that would show Petitioner had problems with the outpatient drug program and that he asked to be placed in a residential drug program.  He also never raised to the trial court the need for evidence relating to the arrest on July 23, 2007 for possession of drug paraphernalia.   Thus, Petitioner was never actually precluded from obtaining and presenting evidence that related to these matters.

Assuming, however, the denial of the request for continuance was a constitutional error and Petitioner actually had shown he was denied his due process rights to provide exculpatory evidence regarding the testing and arrest for possession of drug paraphernalia, there is no indication there was actual prejudice to Petitioner's defense resulting from the refusal to grant a continuance or that the omission of the alleged exculpatory evidence had a "substantial and injurious effect or influence" on the revocation of his parole.   *Gallego*, 124 F.3d at 1072; *Brecht*, 507 U.S. at 623.  Peti-

tioner testified his drug test results were questionable because there were a lot of "young kids" taking the tests and they were not being monitored.  (Lodgment No. 2, Vol. 3, at 29-30.)  He testified about an incident where the temperature level of a test was correct, but he was told there was water in the urine and he had to be re-tested and ultimately passed the test.  *Id.*  He also testified about his efforts to enter an in-patient program at the VVSD because he felt that the V.A. out-patient program was not sufficient treatment for his addiction.  *Id.*, at 31-32.  He did not offer any testimony about his most recent arrest, although he had the opportunity to do so.  In fact, the trial court considered Petitioner's testimony about the drug tests, as well as the testimony of Ranshaw, and took judicial notice of "the San Diego Law Screen," which noted the arrest.  *Id.* at 37-38.  There is no reason to believe that had Petitioner offered the unidentified evidence he claims he was prevented from producing it would have had a substantial effect or influence on the trial court's decision to revoke his probation.

In sum, Petitioner has not shown that the trial court violated his due process rights, including the right to present evidence in one's defense, or that the California Supreme Court's denial of this claim was contrary to, or an unreasonable application of, established U.S. Supreme Court precedent.   The Court, therefore recommends this claim be denied.

## CONCLUSION AND RECOMMENDATION

After a review of the record in this matter, the undersigned Magistrate Judge recommends that the Petition for Writ of Habeas Corpus be **DENIED** with prejudice.

This report and recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than **June 25, 2010**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the

Court and served on all parties no later than **July 9, 2010**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  June 4, 2010

_____
Jan M. Adler
U.S. Magistrate Judge